Leo V. Goldstein-Gureff (Bar No. LG 1271)
Kevin R. Garden (*Pro Hac Vice*)
International Legal Counsels PC
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
phone: (703) 739-9111
fax:     (202) 318-0723

*Attorney for Plaintiff*
*MyPlayCity, Inc.*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MyPlayCity, Inc., ) <br> a corporation organized under the laws of the ) <br> Commonwealth of Virginia, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> Conduit Limited, ) <br> a jurisdiction of organization of the company ) <br> is unknown. ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. 10CIV1615 <br><br> Hon. Colleen McMahon <br><br> **SECOND AMENDED** <br> **COMPLAINT** |

      1.     This is an action by MyPlayCity, Inc., a corporation organized under the laws of the Commonwealth of Virginia ("Plaintiff"), by and through its attorneys to recover damages arising from the breach by Conduit Limited ("Defendant") of the Publisher Revenue-Share Agreement entered into by Plaintiff and Defendant, dated January 31, 2008 ("First Revenue-Share Agreement") and Publisher Revenue-Share Agreement entered into by Plaintiff and Defendant, dated March 11, 2008 ("Second Revenue-Share Agreement," and together with the First Revenue-Share Agreement, the "Revenue-Share Agreements"), due to Defendant's failure to pay amounts due and

outstanding under the Revenue-Share Agreements.  In addition, Plaintiff is seeking damages from the unauthorized use of its trademark by the Defendant and to enjoin the Defendant's future infringement.  Specifically, Defendant has and, upon information and belief, continues to distribute Plaintiff's materials and uses Plaintiff's registered trademark without Plaintiff's permission.  Because Defendant infringed upon Plaintiff's rights, and because the infringement is ongoing, Plaintiff seeks damages and injunctive relief.  Plaintiff alleges and avers as follows based on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of the Defendant:

### PARTIES

2.  Plaintiff MyPlayCity, Inc. is a corporation organized under the laws of the Commonwealth of Virginia with its registered office at 901 N. Pitt Street, Suite 325, Alexandria, VA 22314, United States of America.  In furtherance of its business mission, Plaintiff develops, markets, distributes and licenses computer software.

3.  Upon information and belief, Defendant Conduit Limited is a limited liability company with the jurisdiction of its organization currently unknown, with its principal place of business at Golda Meir 5, Ness-Ziona, Israel.  Upon information and belief, Defendant is engaged in the business of web-publishing and advertising, marketing and distributing computer software and it does business worldwide, including in the territory of the United States and in the County of New York.

### JURISDICTION AND VENUE

4.  This Court has jurisdiction over the trademark infringement and unfair competition claims being brought in this action pursuant to §§32 and 43 of the Lanham Act and 15 U.S.C. §1114(1)(trademark infringement) and 15 U.S.C. § 1125(a) (unfair

competition). The Court has jurisdiction over the breach of contract claim being brought against Defendant in this action under 28 U.S.C. § 1332, based on diversity of citizenship because Defendant and Plaintiff are residents of different states and the amount of controversy exceeds $75,000, exclusive of interests and costs.

5. Venue in this District is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) because, based on information set forth in the Revenue-Share Agreements such agreements are subject to certain Publisher Agreements, located at *www.conduit.com* pursuant to which the Plaintiff and the Defendant agreed to submit to the personal and exclusive jurisdiction of the courts located in City of New York, in the State of New York.

## AVERMENTS COMMON TO ALL CLAIMS

6. Plaintiff, *inter alia,* is responsible for the creation, development and distribution of numerous software programs, including numerous casual video games ("Products").

7. In every year since 2007, Plaintiff has spent significant amounts of money to develop, create, produce, advertise and distribute various software programs and trademarks. Plaintiff licenses or otherwise distributes such software programs to various end users, distributors and licensees, which are either individuals or companies. Such licensing and distribution is the sole source of livelihood for Plaintiff. Plaintiff's software products have become widely known for their novelty, reliability and superior quality.

8. Plaintiff has also spent substantial resources developing and establishing its trademark in connection with the products and services it provides and has registered its rights in the trademark MyPlayCity on September 25, 2007, registration number 3296674 ("Trademark"). The registration of the Trademark as of the date of this Complaint is valid, unrevoked and uncancelled. The registration of the Trademark constitutes *prima facie* evidence of its validity and conclusive evidence of Plaintiff's exclusive right to use the Trademark in commerce in connection with the goods named therein, and commercially related goods.

9. The Trademark has been widely promoted, both in the United States and worldwide. The public, customers and the industry have come to recognize that products baring the Trademark originate with Plaintiff.

10. Plaintiff licenses and distributes its Products through Plaintiff's website as well as various online merchants and licensees throughout the world, both individually as well as part of the bundled products, i.e. the products which are a combination of the plaintiff's Products and the materials of third parties with the software of other developers and retailers.

11. The certificate of registration of the Trademark is attached hereto as Attachment 1.

12. On January 31, 2008, Plaintiff and Defendant entered into the First Revenue-Share Agreement, pursuant to which Plaintiff provided the content, including without limitation graphics, animations, user interface items, such as dialog boxes and textual messages for the development of Defendant's toolbar MyPlayCityRU bearing Plaintiff's Trademark ("MyPlayCityRU Toolbar"). Plaintiff authorized Defendant to

distribute and provide access to certain Products via MyPlayCityRU Toolbar and to use Plaintiff's Trademark in connection with the MyPlayCityRU Toolbar and in return Plaintiff was to receive 50% of the revenue received by Defendant from the distribution and marketing of MyPlayCityRU Toolbar.

13. Furthermore, on March 11, 2008 Plaintiff and Defendant entered into the Second Revenue-Share Agreement pursuant to which Plaintiff provided the content, including without limitation graphics, animations, user interface items, such as dialog boxes and textual messages for the development of Defendant's second toolbar MyPlayCity bearing Plaintiff's Trademark ("MyPlayCity Toolbar" and together with MyPlayCityRU Toolbar, "Toolbars"). Pursuant to the Second Revenue-Share Agreement the Defendant received the license to distribute and provide access to Products via MyPlayCity and MyPlayCityRU Toolbars and to use Plaintiff's Trademark in connection with MyPlayCity and MyPlayCityRU Toolbars. In return for the grant of such license Plaintiff was to receive 50% of the revenue received by Defendant from the distribution and marketing of MyPlayCity and MyPlayCityRU Toolbars.

14. On or about January 7, 2009, Defendant increased the revenue share payable to Plaintiff by Defendant for the rights to distribute and market MyPlayCity Toolbar from 50% as was set forth in Revenue-Share Agreements to 75%.

15. On or about February 6, 2009, Defendant increased the revenue share payable to Plaintiff by Defendant for the rights to distribute and market MyPlayCityRU Toolbar from 50% as was set forth in Revenue-Share Agreements to 85%.

16. Pursuant to the Revenue-Share Agreements the Toolbars were available for download by Defendant's customers on the Defendant's websites located at

www.conduit.com and www.myplaycity.ourtoolbar.com. Upon the download and installation of the Toolbars on the customer's computers and when used by such customers, the Toolbars provided Defendant's customers unlimited access to Plaintiff's Products located on Plaintiff's websites.

17. No rights apart from those as specified in the Revenue-Share Agreements have been granted to Defendant by the Plaintiff.

18. On September 16, 2009 Defendant forwarded to a third party a Notice of Termination purporting to terminate the Revenue-Share Agreements, attached hereto as Attachment 2.

19. Pursuant to the Notice of Termination both Revenue-Share Agreements were to be terminated as of October 15, 2009.

20. Plaintiff disputed receiving such Notice of Termination since it was not addressed or sent to the Plaintiff, but instead to a third party. Defendant argued that although the letter was improperly addressed, Plaintiff nevertheless received a proper notice of termination of the Revenue-Share Agreements and that such notice was sufficient.

21. Plaintiff does not believe that it was sufficiently informed about the termination of the Revenue-Share Agreements, due to the deficiency of the Notice of Termination.

22. Defendant did not cease distribution and granting access to the Plaintiff's Products and use of the Trademark in connection with MyPlayCity and MyPlayCityRU Toolbars until June 12, 2010. Therefore, Defendant is liable to Plaintiff for revenue share

for such distribution of Plaintiff's Products and use of the Trademark in the amount to be determined at trial.

23.  In the alternative, assuming that such Revenue-Share Agreements were terminated as of October 15, 2009 as specified in the Notice of Termination, Defendant was required to cease the distribution and granting of access to Plaintiff's Products and use of Plaintiff's Trademark.

24.  However, as stated above, as Defendant only ceased such use and distribution as of June 12, 2010 and therefore, is liable to Plaintiff under statute for any such use.

25.  Further, contrary to Plaintiff and Defendant's agreements and understanding to increase the revenue share received by Plaintive from Defendant for the rights to distribute and market Toolbars from 50% for each Toolbar to 75% for MyPlayCity Toolbar and 85% for MyPlayCityRU Toolbar, Defendant consistently and improperly underpaid Plaintiff its share of revenues received by Defendant as a result of the distribution and marketing of Toolbars.

26.  On or about May, 2009, Plaintiff and Defendant discussed running experimental advertising campaigns using Plaintiff's content to find more efficient means to market Plaintiff's content.  At the time, the discussions concerning the experimental advertising campaigns were still continuing, Defendant began running experimental advertising campaigns without informing Plaintiff of the campaigns' launch.  Moreover, Defendant, improperly disclosed results of the experimental advertising campaigns to third parties, some of which are Plaintiff's direct competitors, improperly used materials and results of the experimental advertising campaigns solely for its own and third parties'

benefit, and failed to share revenues received as a result of these campaigns with Plaintiff. As a result of Defendant's illicit actions relating to experimental advertising campaigns, Plaintiff has been damaged and suffered competitive disadvantage in an amount to be ascertained at trial.

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

27. Plaintiff re-alleges the allegations contained in paragraphs 1 through 26 of this Complaint as though fully and completely set forth herein.

28. Plaintiff and Defendant entered into the First Revenue-Share Agreement on January 31, 2008 and into the Second Revenue-Share Agreement on March 11, 2008.

29. Plaintiff performed its duties and obligations under such Revenue-Share Agreements in full.

30. Defendant failed to fully perform its obligations by underpaying Plaintiff and failing to pay to Plaintiff the proper portion of the revenue share as agreed by Plaintiff and Defendant during the term of the Revenue-Share Agreements in the amount of not less than $289,000.00.

31. Defendant failed to fully perform its obligations by failing to pay to Plaintiff a portion of the revenue share as provided under the Revenue-Share Agreements after their purported termination in the amount to be determined at trial.

32. Defendant has realized unjust profits, gains and advantages as a proximate result of its breach of Revenue-Share Agreements with the Plaintiff.

33. As a direct and proximate result of Defendant's breach, Plaintiff sustained substantial damages in the amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
(Unjust Enrichment)

34. Plaintiff re-alleges the allegations contained in paragraphs 1 through 33 of this Complaint as though fully and completely set forth herein.

35 As a result of the conduct described above, Defendant has been and will be unjustly enriched at the expense of Plaintiff.  Specifically, Defendant's unfair and illegal actions as described above have enabled Defendant to distribute and grant access to Plaintiff's Products and use Plaintiff's Trademark without making any payments to Plaintiff, unjustly enriching Defendant at an amount to be proven at trial.

36. Plaintiff is entitled to be compensated for Defendant's unjust enrichment in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
(Federal Trademark Infringement, 15 U.S.C. §1114)

37. Plaintiff re-alleges the allegations contained in paragraphs 1 through 36 of this Complaint as though fully and completely set forth herein.

38. The Trademark and goodwill associated therewith in the United States and throughout the world are of great and incalculable value, are highly distinctive and arbitrary, and have become universally associated in public mind with the products and services of the very highest quality and reputation finding their source in Plaintiff.

39. Upon information and belief, without Plaintiff's authorization or consent, Defendant used Plaintiff's Trademark following the termination of the Revenue-Share Agreements, thus causing the deception among the general purchasing public as to the origin, association and affiliation of the Trademark, and is likely to deceive the public

into believing that Defendant had the license and/or authorization to use the Plaintiff's Trademark, in detriment and to the damage of Plaintiff's reputation, goodwill and sales.

40.     Plaintiff has no adequate remedy at law, and if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

41.     Upon information and belief, the appropriation of Plaintiff's Trademark by Defendant as set forth above is a part of a deliberate plan to trade on the valuable goodwill established in Plaintiff's Trademarks. With knowledge of Plaintiff's rights in the Plaintiff's trademark, the actions of Defendant have been carried out with willful disregard of Plaintiff's rights in violation of 15 U.S.C. § 1114.

42.     As a result of Defendant's activities, Plaintiff has been damaged in an amount to be ascertained at trial.

**FOURTH CLAIM FOR RELIEF**
(Federal Unfair Competition under 15 U.S.C. § 1125(a))

43.     Plaintiff re-alleges the allegations contained in paragraphs 1 through 42 of this Complaint as though fully and completely set forth herein.

44.     The unauthorized use and distribution by Defendant of Plaintiff's Trademark after the alleged termination of the Revenue-Share Agreements in connection with MyPlayCity and MyPlayCityRU Toolbars is likely to cause the public to mistakenly believe that such publication is endorsed by or is in some way affiliated with Plaintiff, and thus constitutes Trademark infringement, false designation of origin, passing off, and unfair competition and is likely to cause Plaintiff's Trademark to lose its significance as

an indicator of origin. Defendant's actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45. Upon information and belief, the appropriation of Plaintiff's Trademark by Defendant as set forth above is a part of a deliberate plan to trade on the valuable goodwill established in Plaintiff's Trademarks. With knowledge of Plaintiff's rights in the Plaintiff's trademark, the actions of Defendant have been carried out with willful disregard of Plaintiff's rights in violation of 15 U.S.C. § 1125(a).

## FIFTH CLAIM FOR RELIEF
(Common Law Unfair Competition, Misappropriation and Trademark Infringement)

46. Plaintiff re-alleges the allegations contained in paragraphs 1 through 45 of this Complaint as though fully and completely set forth herein.

47. By its aforementioned conduct, including conduct calculated to increase its profits by deceiving and confusing the public, Defendant continued after its alleged termination of the Revenue-Share Agreements to misappropriate the valuable goodwill of Plaintiff's Trademark, to infringe Plaintiff's rights therein, and to unfairly compete with plaintiff under the laws of the State of New York.

## SIXTH CLAIM FOR RELIEF
(Violation of New York's Consumer Protection Act -- General Business Law Article 22-A §349, §350)

48. Plaintiff re-alleges the allegations contained in paragraphs 1 through 47 of this Complaint as though fully and completely set forth herein.

49. Defendant's unauthorized use of Plaintiff's Trademark, calculated to increase its profits by deceiving and confusing the public, Defendant causes likelihood of confusion as to the approval, sponsorship and affiliation with Plaintiff and constitutes

unlawful, unfair, and fraudulent business practices and unfair, deceptive and misleading advertising in material respect under The New York's Consumer Protection Act.

## SEVENTH CLAIM FOR RELIEF
(Copyright Infringement under 17 U. S. C. § 101 *et seq.*)

50. Plaintiff re-alleges the allegations contained in paragraphs 1 through 49 of this Complaint as though fully and completely set forth herein.

51. Plaintiff is the legal owner of the United States copyrights to the source code and the software of the Products that have been unlawfully infringed upon by Defendant.

52. Plaintiff has registered the copyrights with the Copyright Office and possesses valid registrations for the copyrighted source code and the software program of the Products.

53. After October 15, 2009, Defendant provided its customers access to unlimited downloads of Plaintiff's copyrighted Products by volitionally distributing the Toolbars without Plaintiff's authorization or permission, and thereby actively engaging in unauthorized distribution of the copies of Plaintiffs' copyrighted Products.

54. These acts are an infringement of the exclusive rights granted to the Plaintiff by 17 U.S.C. § 106(3).

55. Defendant committed such infringement with the knowledge that the source code and software of the Products that it was distributing was subject to valid copyright rights, and with the knowledge that it was not authorized to distribute copyrighted Product following the termination of the Revenue-Share Agreements. Such infringement was thus "willful" within the meaning of 17 U. S. C. § 504(c)(2).

56. For acts of copyright infringement, Plaintiff is entitled to recover from Defendant Plaintiff's damages pursuant to 17 U.S.C. § 504. Plaintiff reserves the right provided to it under 17 U.S.C. § 504 to make an election after all information is obtained and prior to issuance of final judgment in this matter between the receipt of actual damages or statutory damages as set forth in 17 U.S.C. § 504.

57. Plaintiff is also entitled to recover its attorney's fees and costs of suit pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant injunctive and declaratory relief against Defendant as follows:

    a. Issue a permanent injunction prohibiting Defendant from any further use and distribution of the Plaintiff's Trademark;

    b. Issue an order declaring that Defendant willfully violated Plaintiff's rights;

    c. Issue an order declaring that Defendant breached the terms of the Revenue-Share Agreements and is therefore liable to Plaintiff in the amounts to be determined at trial;

    d. Issue an order declaring that Defendant illegally used and therefore infringed Plaintiff's Trademark and/or Plaintiff's copyrighted material and is liable to Plaintiff for damages, which shall, at Plaintiff's subsequent election, be either Plaintiff's actual damages as determined at trial or statutory damages for willful infringement pursuant to 17 U.S.C. § 504(c)(2), plus punitive damages as allowed by law, together with prejudgment interest thereon, and to account for and return to Plaintiff any monies,

profits and advantages wrongfully gained by Defendant as a result of Defendant's wrongful acts;

      e.      Issue judgments consistent with the orders above declaring that Defendant is liable to Plaintiff in the amounts determined at trial;

      f.      As part of the Order and Judgment requested, award Plaintiff its costs and attorneys fees related to its filing and pursuit of this matter, and such further relief as may be appropriate including pre-judgment and post-judgment interest;

      g.      As part of the Order and Judgment request, issue an Order that all damages sustained by Plaintiff be trebled; and

      h.      Provide any further relief deemed proper by the Court.

Dated: January 5, 2011

Respectfully submitted,

Leo V. Goldstein-Gureff (LG 1271)
Kevin R. Garden
International Legal Counsels PC
901 N. Pitt Street, Suite 325
Alexandria, VA 22314
phone: (703) 739 – 9111
Email: lg@legal-counsels.com

## CERTIFICATE OF SERVICE

I hereby certify on this 5th day of January 2011, a copy of the forgoing

### SECOND AMENDED COMPLAINT

was served upon Eli Schulman (eli@schulmancharish.com) and Michael A. Charish (michael@schulmancharish.com)

*[signature]*

Leo V. Goldstein-Gureff

**ATTACHMENT 1**

# The United States of America

## CERTIFICATE OF REGISTRATION
### PRINCIPAL REGISTER

*The Mark shown in this certificate has been registered in the United States Patent and Trademark Office to the named registrant.*

*The records of the United States Patent and Trademark Office show that an application for registration of the Mark shown in this Certificate was filed in the Office; that the application was examined and determined to be in compliance with the requirements of the law and with the regulations prescribed by the Director of the United States Patent and Trademark Office; and that the Applicant is entitled to registration of the Mark under the Trademark Act of 1946, as Amended.*

*A copy of the Mark and pertinent data from the application are part of this certificate.*

***To avoid CANCELLATION of the registration, the owner of the registration must submit a declaration of continued use or excusable non-use between the fifth and sixth years after the registration date.*** *(See next page for more information.) Assuming such a declaration is properly filed, the registration will remain in force for ten (10) years, unless terminated by an order of the Commissioner for Trademarks or a federal court. (See next page for information on maintenance requirements for successive ten-year periods.)*



*Director of the United States Patent and Trademark Office*

Int. Cls.: 9, 35 and 41

Prior U.S. Cls.: 21, 23, 26, 36, 38, 100, 101, 102 and 107

**United States Patent and Trademark Office**

Reg. No. 3,296,674
Registered Sep. 25, 2007

TRADEMARK
SERVICE MARK
PRINCIPAL REGISTER

# MyPlayCity

BULAVIN, DMITRY (RUSSIAN FED. INDIVIDUAL)
NOVO-VOKZALNAYA 249-150
SAMARA, RUSSIAN FED. 443125

FOR: ENTERTAINMENT MULTIMEDIA COMPUTER GAME PROGRAMS AND COMPUTER GAME SOFTWARE, ELECTRONIC GAME PROGRAMS; COMPUTER GAME PROGRAMS; INTERACTIVE MULTIMEDIA GAME PROGRAMS; DOWNLOADABLE ELECTRONIC GAME PROGRAMS VIA THE INTERNET; ELECTRONIC GAME SOFTWARE; DOWNLOADABLE COMPUTER GAME SOFTWARE; USER DOCUMENTATION MANUALS SOLD AS A UNIT THEREWITH, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 5-18-2005; IN COMMERCE 5-18-2005.

FOR: ADVERTISEMENT AND PUBLICITY SERVICES, NAMELY, PROMOTING THE GOODS, SERVICES, BRAND IDENTITY AND COMMERCIAL INFORMATION OF THIRD PARTIES THROUGH VIDEO AND ON-LINE MEDIUM, NAMELY ELECTRONIC GAME SOFTWARE; ON-LINE ADVERTISING AND MARKETING SERVICES; PROVIDING ADVERTISING SERVICES USING 3D AND ANIMATION DESIGNS; PROMOTING THE GOODS AND SERVICES OF OTHERS BY PROVIDING HYPERTEXT LINKS TO THE WEB SITES OF OTHERS, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 7-1-2005; IN COMMERCE 7-1-2005.

FOR: ENTERTAINMENT SERVICES, NAMELY, PROVIDING ON-LINE COMPUTER GAMES AND RELATED ENTERTAINMENT INFORMATION IN THE FIELD OF ONLINE COMPUTER GAMES; PROVIDING A WEBSITE FEATURING ELECTRONIC GAME CONTENT, INTERACTIVE GAME CONTENT, PROVIDING INFORMATION ON-LINE RELATING TO COMPUTER GAMES, COMPUTER ENHANCEMENTS FOR GAMES AND ELECTRONIC GAME ENTERTAINMENT; PROVIDING COMPUTER GAMES THAT MAY BE ACCESSED NETWORK-WIDE BY NETWORK USERS; ORGANIZING COMPUTER AND VIDEO GAME COMPETITIONS, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 5-18-2005; IN COMMERCE 5-18-2005.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 77-064,349, FILED 12-14-2006.

GISELLE AGOSTO, EXAMINING ATTORNEY

**ATTACHMENT 2**

# conduit

September 16, 2009

**VIA EMAIL** (to dmitry@myplaycity.com, and arodichev@myplaycity.com)

**My Place City, Inc.**
001 N. Pitt Street Suite 325,
Alexandria,
VA 22314
USA

Dear Sirs;

Re: **Notice of Termination**

Pursuant to and in accordance with Section 4 of the Publisher Revenue-Share Agreement by and between Conduit Ltd. ("**Conduit**") and My Place City, Inc. ("**Publisher**"), dated January 31, 2008 (the "**First Agreement**"), and Section 4 of the Publisher Revenue-Share Agreement (ISV) by and between Conduit and Publisher, dated March 11, 2008 (the "**Second Agreement**", and together with the First Agreement, the "**Agreements**"), Conduit hereby notifies you of the termination of the Agreements.

Pursuant to Section 4 of the First Agreement and Section 4 of the Second Agreement, the termination shall take effect as of October 15, 2009.

Merav Yardy, Legal Counsel
Conduit Ltd.

5 Golda Meir St. Park Ta'asyot Hamada, Nes Ziona, Israel 74140
Tel: +972.8.946.1713 Fax: +972.8.946.1853